UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ENA L. MITCHELL,

              Plaintiff,

    v.

CITY OF SOLEDAD,

              Defendant.

Case No. 5:26-cv-00017-EJD

**ORDER GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND**

Re: ECF No. 4

Pro se Plaintiff Ena L. Mitchell ("Mitchell") brings this suit against Defendant City of Soledad ("City")[1] alleging that the City violated her constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by towing her car, performing an unlawful safety inspection of her home, and requiring her to vacate the home. Notice of Removal, Ex. A (Amended Complaint), ECF No. 1-1 ("Complaint" or "Compl."). Mitchell also alleges violations of the California Penal Code, the California Welfare and Institution Code, and attempted kidnapping under 18 U.S.C. § 242. Before the Court is the City's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). Mot., ECF No. 4. Mitchell did not file an opposition or other pleading responsive to the City's Motion. The City filed a Notice of Non-Opposition to its Motion on January 29, 2026, indicating that Mitchell failed to timely file an Opposition or Statement of Non-

---

[1] The Notice of Removal clarifies that although Mitchell names two defendants in the caption of the Complaint, the City of Soledad is the proper entity to name in a suit brought against the Soledad Police Department. *See* Not. of Removal 3, ("Plaintiff names two defendants in the caption: THE CITY OF SOLEDAD (erroneously sued as "THE SOLEDAD POLICE DEPARTMENT")).

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

1

Opposition, which was due on January 22, 2026.  Notice of Non-Opp., ECF No. 19.[2]

After carefully reviewing the Complaint and the City's Motion, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the following reasons, the Court **GRANTS** the City's Motion to Dismiss with leave to amend.

## I.      BACKGROUND

### A.      Factual Background

The following factual background is taken from Mitchell's Complaint, attached to the City's Notice of Removal, and filed in Monterey Superior Court on November 26, 2025.  Notice of Removal, Ex. A (Amended Complaint), ECF No. 1-1.

On August 4, 2025, Mitchell's 2009 Kia Spectra was towed from Mitchell's driveway. Compl. 2.  At the time, Mitchell was out of town, and she returned home on August 12, 2025, to find her vehicle and the contents she stored in it missing.  *Id.*  On August 18, 2025, Mitchell filed a police report regarding the stolen vehicle.  *Id.*  The next day, August 19, 2025, officers from the Soledad Police Department ("Police Department") visited Mitchell's home twice.  *Id.*  First, at 9:20 AM, Sergeant Brian Solis and another officer from the Police Department arrived at Mitchell's house.  *Id.* at 2. Sergeant Solis informed Mitchell that the Kia had been towed consistent with his authorization.  *Id.*  Though Mitchell did not receive it, Sergeant Solis informed Mitchell that a letter had been sent to her home explaining why the Kia had been seized.  *Id.* Sergeant Solis and three officers returned to Mitchell's home at 12:00 PM for a second visit. During this visit, one officer pounded on the door and asked Mitchell to come out of the house, but she refused, instead stating that the Kia had been stolen and she wanted it returned.  *Id.* at 3. While still in her house, Mitchell observed one officer walking toward the side of her house, while Sergeant Solis and the other two officers informed Mitchell that her house was condemned

---

[2] Mitchell did not file an opposition or statement of non-opposition to the City's Motion, however, after the City filed its motion, Mitchell moved to remand the case.  ECF Nos. 7, 11, 15.  In her motions, Mitchell asserts that the removal only serves as a method for the Defendant to dismiss this case "without merit."  *Id.* at 2.  This suggests to the Court that the pro se party does not wish for the case to be dismissed, but the Court reminds the parties to follow the local and federal rules for all future motions.

United States District Court
Northern District of California

because it did not have utility services. *Id.* Mitchell stopped receiving Soledad utilities in 2016 following excessive charges and improper billing practices. *Id.* at 7. The officers placed two notices on Mitchell's home and informed her that she needed to vacate it. *Id.* Mitchell refused to vacate the house. *Id.* at 3. Although Mitchell was unaware of it, at some point prior to the officers' arrival, a notice had been placed on Mitchell's door informing her that within 24 hours a warrant would be issued from the Superior Court of California authorizing inspection of the property. *Id.* at 7. Mitchell did not consent to an inspection. *Id.*

On August 20, 2025, Mitchell submitted an online complaint to the Police Department. *Id.* at 3. Mitchell submitted a follow-up demand letter on August 25, 2025.[3] *Id.* Mitchell received four responses from the Police Department, two by email and two by mail. *Id.* Each response indicated that the case was closed but did not provide a satisfactory explanation as to the results of the investigation. *Id.*; *see also id.* at 6.

At some point after the Police Department towed the Kia, Sergeant Solis explained that two violations led to the towing. *Id.* at 5. First, Sergeant Solis annotated an orange sticker and placed it on the Kia's windshield. The sticker indicated that the vehicle violated Soledad Municipal Code Section 10.04.055 and could not be parked on a public street for more than seventy-two hours. *Id.* Second, Sergeant Solis stated that the Kia was considered a nuisance and that this fact was reflected in the letter which Sergeant Solis said was sent to Mitchell's house, but which she did not receive. *Id.*

On August 27, 2025, the Police Department called Mitchell to inform her that she could pick the Kia up from a demolition shop but would need to pay a $3,000 storage fee. *Id.* at 3.

On November 13, 2025, the Police Department executed a safety inspection of Mitchell's house. *Id.* at 8. Mitchell, however, was not served with the inspection warrant signed by Judge Roberts of Monterey County Superior Court before between ten and fifteen officers entered her house. *Id.* During the execution of the warrant, the officers wore riot shields and had guns which

_____

[3] Mitchell's Complaint later states that she sent the demand letter to two Police Department emails on September 8, 2025.

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

United States District Court
Northern District of California

they pointed at Mitchell. *Id.* The officers took Mitchell's phone from her hand and removed her from the house. *Id.* They proceeded to perform a pat down of Mitchell despite her objections. *Id.* During the pat down, the officer removed Mitchell's wallet from her pocket. At this point, an officer stated that Mitchell could see the warrant. *Id.* After approximately twenty to thirty minutes, the officers returned Mitchell's phone to her, however she noticed that several photos and videos from between August 19, 2025, and November 13, 2025, were missing. *Id.* At the conclusion of the safety inspection, the officers informed Mitchell that she could not stay in the home, citing the lack of running water. *Id.* Later that evening, Officer Celaya texted Mitchell a list of necessary corrections and repairs. *Id.*

On October 5, 2025, Mitchell had a portable work table delivered to her residence. On November 17, 2025, Mitchell learned that a police officer had confiscated the work table the day of its delivery. *Id.* at 9. The Police Department informed Mitchell that she could pick it up at the Police Department office. *Id.* Mitchell went to the office on November 18, 2025, to pick up the table, but it appeared that the box that the table was in had been opened and the table seemed to have been used. *Id.*

### B.    Procedural Background

On November 26, 2025, Mitchell filed a First Amended Complaint in Monterey County Superior Court. Compl. The City removed the action to this Court on January 2, 2026, after being served on December 3, 2025. Not. of Removal 3, ECF 1. The City filed the present Motion on January 8, 2026. ECF No. 4. Subsequently, on January 14 and 15, 2026, Mitchell filed three identical motions to remand to Monterey County Superior Court. ECF Nos. 7, 11, 15. This Court denied Mitchell's motion to remand, finding that federal question jurisdiction exists over several of Mitchell's claims, and that supplemental jurisdiction exists for the remaining claims not arising under federal law. *See* Remand Order, ECF No. 28.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

4

United States District Court
Northern District of California

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). If a complaint does not meet the Rule 8(a) standard, it may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 67.

Courts construe pleadings filed pro se more liberally than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, the Court cannot "supply essential elements of the claim that were not initially pled." *Henry v. San Francisco Police Dep't*, No. 14-cv-01624-JSC, 2014 WL 59494840, at *3 (N.D. Cal. Oct. 30, 2014), *aff'd*, 668 F. App'x 727 (9th Cir. 2016) (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

If the Court concludes that dismissal pursuant to Rule 12(b)(6) is proper, it "should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.    DISCUSSION

The City contends that Mitchell fails to state a claim under 42 U.S.C. § 1983 for violations

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

*United States District Court*
*Northern District of California*

of (1) the Fourth Amendment; (2) the Fifth Amendment's due process clause; and (3) the Fourteenth Amendment's due process and takings clauses.  The City also argues that Mitchell's state-law claims fail as a matter of law.  First, the City argues that where Mitchell's claims resemble state-law tort claims, they are barred because Mitchell does not allege compliance with the California Government Claims Act.  Second, the City argues that Mitchell improperly relies upon criminal statutes, including 18 U.S.C. § 242 and provisions of the California Penal Code, because these statutes do not create civil causes of action.  Third, the City argues that Mitchell does not allege facts establishing a claim under California's elder financial abuse action.  Finally, the City argues that Mitchell's reference to "Federal and State Discriminatory Housing Practices" is wholly conclusory.  The Court considers each of the City's arguments for dismissal in turn.

### A.    42 U.S.C. § 1983 & Municipal Liability

42 U.S.C. § 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution of the United States. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694 (1978).  Municipalities are "persons" under § 1983 and can be found liable for violating individuals' Constitutional rights. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690).  The municipality, however, may only be held liable for its *own* illegal acts; "[i]t cannot be held vicariously liable for its employees' actions." *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1026–27 (N.D. Cal. 2022).  "Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity.'" *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694).

A plaintiff may establish municipal liability pursuant to § 1983 in three different ways. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  First, "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom'" constituting the local municipality's standard

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

operating procedure. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may prove that the constitutional tort was committed by an official with final policy-making authority "and that the challenged action itself thus constituted an act of official governmental policy." *Id.* "Third, the plaintiff may prove that an official with policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346–47. State law determines whether an official has final policy-making authority. *Id.* at 1346.

The City contends that Mitchell has failed to state claims upon which relief can be granted because she does not plead municipal liability. Mot. 6. The City does not distinguish between the three possible *Monell* routes of municipal liability, instead arguing that Mitchell's allegations "concern isolated, fact-specific events affecting only her [which] are insufficient as a matter of law to establish municipal liability." *Id.* The Court agrees with the City that under any of the three possible routes, Mitchell has not pleaded sufficient facts to establish municipality liability here. The Court disagrees, however, that "isolated, fact-specific events" affecting only one individual are in all cases insufficient as a matter of law to establish municipal liability, rather, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, *unless* proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (emphasis added). The Court considers which facts, if any, Mitchell alleges to support each of the three *Monell* routes for asserting liability against the City.

First, Mitchell does not assert that the Police Department officers committed the alleged constitutional violations pursuant to a formal governmental policy or longstanding practice or custom constituting the Police Department's standard operating procedure. In fact, she alleges instances of Police Department behavior that deviated from her understanding of typical procedures. *See, e.g.*, Compl. 2 (stating that "no documentation was left at plaintiff's home notifying plaintiff of why [the] vehicle was missing" and that this was inconsistent with the Police Department's typical practice of leaving notices at the door).

Second, Mitchell does not allege that any of the police officers involved in the towing of her

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

United States District Court
Northern District of California

car or the inspection of her home were officials with final policy-making authority. *See Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1297 (E.D. Cal. 2016) ("Mere authority to exercise discretion while performing particular functions does not make the individual a final policymaker unless the decisions are final and unreviewable and are not constrained by the official policies or superior officials" (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 126 (1988))). Mitchell describes actions by Sergeant Brian Solis, Lieutenant Juan Santiago, Officer Celya and other officials or officers, but aside from a passing reference to "the fact that it was a senior police officer who allegedly committed the CRIMES with junior police officers in tow," Mitchell does not consider the policymaking authority of the individuals involved. Compl. 11, *see also Warkentine*, 152 F. Supp. 3d. at 1297 (relevant to the policymaking inquiry are "statutes, ordinances, regulations, city charters, and other similar enactments" (citing *Coming Up, Inc. v. City and Cnty. of San Francisco*, 830 F. Supp. 1302, 1308 (N.D. Cal. 1993)).

Third, because Mitchell has not alleged any of the officers involved have policy-making authority, she cannot allege that such an official ratified a subordinate's unconstitutional action and the basis for it.

Accordingly, the City's motion to dismiss Mitchell's § 1983 claims pursuant to 12(b)(6) is GRANTED.

### B.    Mitchell's State Law & Remaining Claims

#### 1.    Government Claims Act

"The California Government Claims Act [formerly known as the Tort Claims Act] requires a party seeking to recover money damages from a public entity or its employees to present a claim within six months after accrual of the claim to the entity before filing suit in court." *Allums v. Bay Area Rapid Transit*, No. 25-cv-08837-LB, 2025 WL 3724142, at *7 (N.D. Cal. Dec. 23, 2025) (citing Cal. Gov't Code §§ 911.2(a), 945). California Government Code section 911.2 provides that a claim that relates to a cause of action for death or for injury to person or to personal property must be presented to the Department of General Services' Government Claims Program, as set forth in section 915, within six months after the accrual of the cause of action; claims relating to

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

*United States District Court*
*Northern District of California*

any other cause of action must be presented within one year after the accrual of the cause of action. Cal Gov't Code § 911.2; *see also Rockwell v. Tuolumne County*, No. 1:22-cv-00392-JLT-EPG, 2023 WL 8806251, at *9 (E.D. Cal. Dec. 20, 2023). Presentation of a written claim and the rejection of the claim in whole or in part is a condition precedent to suit against a public entity. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). "Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to" dismissal. *Id.* (quoting *Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861 (Cal. Ct. App. 1983)).

The City contends that Mitchell's allegations resembling state-law tort claims are barred because she does not allege compliance with the California Government Claims Act. Mot. 3–4. To the extent that Mitchell seeks to recover money damages from the City for state statutory tort claims, including elder financial abuse under California's Elder Abuse and Dependent Adult Civil Protection Act, Mitchell must allege compliance with the California Government Claims Act. Here, she has not, nor has she offered circumstances excusing non-compliance with the California Government Claims Act. Accordingly, the Court GRANTS the City's Motion and dismisses Mitchell's state-law-based tort claims.

### 2.    Criminal Statutes

Mitchell asserts four claims pursuant to the California Penal Code (sections 368, 136.1, 487(d)(1), and 1407) and one claim pursuant to 18 U.S.C. § 242. As the City notes, however, these criminal provisions provide no basis for civil liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Delaney v. Baker*, 20 Cal. 4th 23, 33 (Cal. 1999) (noting that California Penal Code section 368 provides for *criminal* liability); Cal. Penal Code § 136.1 ("a person who does any of the following is guilty of a public offense and shall be *punished by imprisonment in a county jail for not more than one year or in the state prison*" (emphasis added)). Because these criminal statutes do not provide a basis for civil liability, Mitchell's claims premised on these statutes fail as a matter of law. The Court GRANTS the City's motion to dismiss these claims.

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

### 3. Housing Discrimination

Mitchell alleges "housing discrimination violations," but has not identified the statutory basis for her claim, nor has she alleged a discriminatory practice or otherwise asserted that she is a member of a protected class. *See, e.g.*, Cal. Gov. Code § 12955 (identifying unlawful housing discrimination practices). The Court GRANTS the City's motion to dismiss Mitchell's claims premised on "housing discrimination violations."

## IV. LEAVE TO AMEND

Finally, this Court must consider whether to grant leave to amend. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and quotation marks omitted). Further, a "district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Castillo v. City of San Jose*, No. 24-cv-00701-SVK, 2025 WL 1370811, at *4 (N.D. Cal. May 12, 2025) (citing *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

The City argues that Mitchell "cannot convert criminal statutes into civil causes of action, cannot impose municipal liability without alleging a policy or custom, and cannot overcome statutory bars to relief." Mot. 8. The Court agrees that Mitchell cannot bring civil claims based on the cited criminal statutes, and therefore amendment to those claims would be futile. In light of Mitchell's pro se status and because this will be her first opportunity for amendment before this Court, this Court will, however, grant leave to amend to allow Mitchell to replead all of her claims except for those alleging violations of the California Penal Code or attempted kidnapping under color of law pursuant to 18 U.S.C. § 242. *See Castillo*, 2025 WL 1370811, at *4 ("Indeed, district courts regularly give *pro se* litigants a second or third bite at amendment before determining that further attempts would be futile.").

## V. CONCLUSION

Based on the foregoing, the City's Motion is GRANTED WITH LEAVE TO AMEND as

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

United States District Court
Northern District of California

to all claims EXCEPT FOR those brought pursuant to California Penal Code sections 368, 136.1, 487(d)(1), and 1407 and that alleging attempted kidnapping under color of law.  Any amended complaint must be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: June 8, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No. 5:26-cv-00017-EJD
ORDER GRANTING MOT. TO DISMISS

11